1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LUCINDA SIMPSON,

      **Plaintiff,**

      vs.

COUNTY OF CONTRA COSTA *et al.*,

      **Defendant(s).**

**Case No.: 12-CV-05303 YGR**

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Lucinda Simpson ("Plaintiff" or "Simpson") claims the dispositive reason she was not hired by the Contra Costa County District Attorney's Office is because she campaigned for the candidate who lost the election for District Attorney. Plaintiff's First Amended Complaint ("FAC") brings three claims for "Retaliatory Failure to Hire" under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (Count I), and California Constitution, Article I, Section 2(a) (Count II), and Section 3(a) (Count III).

Defendants Contra Costa County (the "County"), District Attorney Mark Peterson ("Peterson"), and the Director of Human Resources Ted Cwiek ("Cwiek") (collectively "Defendants") have filed a Motion to Dismiss on the grounds that: (1) under the "policymaking exception" to the First Amendment, political loyalty is a legitimate matter to be considered when hiring a Deputy District Attorney; (2) Count I fails to allege that any defendant took an adverse employment action against her or that her political activity was a substantial or motivating factor for any adverse action; and (3) Counts II and III fail because there is no private right of action for damages under Cal. Const. Article I, §§ 2 & 3. The Court heard oral argument on March 26, 2013.

Having carefully considered the papers submitted, the amended complaint, and the argument of counsel, for the reasons set forth below, the Court hereby **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss **WITHOUT LEAVE TO AMEND**.  Whether a particular position falls under the "policymaking exception" to the First Amendment cannot be determined on the basis of a job title alone.  Plaintiff has pled sufficient facts to state a plausible claim for First Amendment Retaliation.  Therefore, the motion is **DENIED** as to Count I.  The Motion is **GRANTED** as to Counts II and III because California courts do not recognize a private right of action for damages under California Constitution, Art. I, §§ 2 & 3.  At oral argument Plaintiff's counsel agreed to withdraw both claims.  Therefore, Counts II and III are **DISMISSED WITHOUT LEAVE TO AMEND**.

## I.     BACKGROUND

This case arises from allegations of political patronage.  Plaintiff Lucinda Simpson alleges that Defendants denied her right to reemployment in retaliation for supporting an unsuccessful candidate for District Attorney.  (FAC ¶ 1.)  Simpson worked as a Deputy District Attorney at the Contra Costa County District Attorney's Office from 1999 through August 2010, when she left to pursue another employment opportunity.  (*Id.* ¶ 15.)  Simpson later reapplied to work for the County, interviewed for an entry level position but was not hired because the Defendants opposed her political activity.

Throughout 2009 and 2010, Simpson publicly campaigned for Dan O'Malley for the position of Contra Costa County District Attorney in both the primary and general elections of 2010.  (*Id.* ¶ 14.)  Defendant Peterson was O'Malley's opponent.  (*Id.* ¶ 14.)  In November 2010, Peterson won the election.  (*Id.* ¶ 20.)

In October 2010, Simpson formally requested to be placed on the County's reemployment list but due to her political affiliation with and support for candidate O'Malley, Defendants Peterson and Cwiek did not place Simpson on the reemployment list until December 2011.  (*Id.* ¶¶ 18-30.)  In October 2010, Simpson first submitted a written request to Cwiek to be placed on the County's reemployment list.  (*Id.* ¶ 18.)  In April and May of 2011, Simpson inquired into whether her name was placed on the reemployment list, and in May 2011 was informed by the County the Peterson intentionally withheld Simpson's name from the list.  (*Id.* ¶¶ 21-22.)  In June and August of 2011,

United States District Court
Northern District of California

1  Simpson appealed the decision not to place her name on the reemployment list, but Peterson and

2  Cwiek continued to deny Simpson placement on the reemployment list.  (*Id.* ¶¶ 23-27.)  Finally, in

3  December 2011, Simpson was added to the reemployment list for the entry level position of Deputy

4  District Attorney – Basic Level III.  (*Id.* ¶¶ 29-30.)

5      In December 2011, Simpson interviewed for the entry level position of Deputy District

6  Attorney – Basic Level III but Peterson and Cwiek made the decision not to hire Simpson because

7  she had supported O'Malley in the race for District Attorney.  (*Id.* ¶¶ 31-35.)  Simpson was the most

8  qualified candidate for the position and interviewed better than the other candidates.  (*Id.* ¶ 32.)

9  Another applicant who had campaigned for Peterson, Laura Delehunt, was ineligible for the position,

10 far less experienced and far less qualified than Simpson, but was hired.  (*Id.* ¶¶ 33-35.)

11 **II.     LEGAL STANDARD**

12     A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the

13 complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "Dismissal can be based

14 on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

15 legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  All allegations

16 of material fact are taken as true and construed in the light most favorable to the plaintiff.  *Johnson v.*

17 *Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011).  To withstand a motion to dismiss, "a

18 complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

19 plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

20 *Twombly*, 550 U.S. 544, 557 (2007)).

21 **III.    DISCUSSION**

22     The First Amendment protects the rights of citizens to criticize a government official and to

23 support a candidate opposing that official, and "[a] citizen does not check these rights at the door

24 when [she applies for] a government job."  *Bardzik v. County of Orange*, 635 F.3d 1138, 1144 (9th

25 Cir. 2011) (citing *Branti v. Finkel*, 445 U.S. 507, 513-17 (1980)).  Although the government may

26 deny a person the benefit of employment for any number of valid reasons, it may not deny the benefit

27 of employment on a basis that infringes on a person's constitutionally protected interest in freedom of

28 speech.  *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990) (extending constitutional ban

*United States District Court*
*Northern District of California*

on patronage dismissals to employment decisions concerning promotions, transfers, recalls, and hiring). Conditioning hiring decisions based on political belief and association constitutes a significant impairment of First Amendment rights that can be justified only if narrowly tailored to a compelling governmental interest. *Id*.

## A.   FIRST AMENDMENT RETALIATION CLAIM[1]

A threshold inquiry is whether the entry level position of Deputy District Attorney – Basic Level III for which Simpson interviewed is a policymaking position.

### 1.   *Plaintiff's Status as a Policymaker*

Under the "policymaker exception" to this First Amendment protection, it may be permissible for public employers to make political patronage the dispositive reason for an employment action. Choosing or dismissing employees on the basis of their political views may be necessary to advance the government's interest in securing employees who will loyally implement its policies where the employees act as confidential advisors or formulate plans to implement policy. *Bardzik*, *supra*, 635 F.3d at 1148 (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976)) (patronage may be necessary to ensure that "representative government [is] not … undercut by tactics obstructing the implementation of policies of the new administration."). This "policymaker exception" recognizes that an elected official must be able to appoint some high-level, personally and politically loyal officials who will help implement the policies for which the public voted. *Id*.[2] In this context, the term "policymaker" does not mean "one who makes policy," but rather the term refers to whether the position is one in which political affiliation is a legitimate matter to be considered. *Hobler v. Brueher*, 325 F.3d 1145, 1149 (9th Cir. 2003). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position," but whether the hiring authority can demonstrate that political affiliation is

---

[1] The First Amendment is made applicable to the States through the Fourteenth Amendment. *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013) (citing *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1 (1947). In their Motion to Dismiss, Defendants' argument that they "do not know what Plaintiff alleges under the Fourteenth Amendment" strains credulity. (Mot. at 12-13.)

[2] By contrast, with rank-and-file employees, who "have only limited responsibility and are therefore not in a position to thwart the goals of the in-party," a government's interest in securing effective and efficient employees can be achieved through the less drastic means of discharging, transferring, or demoting those whose work is inadequate. *Rutan*, *supra*, 497 U.S. 62.

United States District Court
Northern District of California

1  "an appropriate requirement for the effective performance of the public office involved."  *Branti*,

2  *supra*, 445 U.S. at 518.[3]

3          The determination of whether a particular position falls under the "policymaking exception"

4  is a mixed question of law and fact.  *Hobler*, *supra*, 325 F.3d at 1150.  "[D]etermining the particular

5  duties of a position is a factual question, while determining whether those duties ultimately make that

6  position a policymaking or confidential position is a question of law."  *Id.* (citing *Walker v. City of*

7  *Lakewood*, 272 F.3d 1114, 1131 (9th Cir. 2001)).  A job title is not determinative of whether a public

8  employee is a "confidential employee" or "policymaker."  *Id.* at 1151 ("the question cannot properly

9  be answered by determining whether their titles fit into the pigeonhole").  The question is whether

10  political loyalty is an appropriate requirement for the effective performance of the job based on the

11  actual, not the possible, duties performed by the employee.  *DiRuzza v. County of Tehama*, 206 F.3d

12  1304, 1310 (9th Cir. 2000).

13          Here, the FAC does not contain any description of the duties and responsibilities for the entry

14  level Deputy District Attorney – Basic Level III position for which Simpson interviewed.[4]  While it is

15  possible that a Deputy District Attorney – Basic Level III is a "policymaker," there are no facts in the

16  record regarding the duties actually performed from which to determine whether political loyalty is a

17  legitimate requirement for the job.[5]  Defendants may be able to prove at trial, or perhaps even on

18  summary judgment, that political loyalty in a Deputy District Attorney – Basic Level III is needed for

19

20

21

22  [3] The Supreme Court provides the following illustration:  a football coach at a state university may formulate
policy, but no one could seriously claim that a coach affiliated with the Republican party could not effectively

23  perform his job if a Democrat was Governor, or vice versa.  *Branti*, *supra*, 445 U.S. at 518.

24  [4] The FAC describes the position of Deputy District Attorney – Basic Level III as an entry level, civil service
position without managerial responsibilities.  (FAC ¶ 30.)  The FAC further alleges that these entry level

25  attorneys do not act as advisors or implement policy.  *Id.*

26  [5] In decisions finding city attorneys, and assistant and deputy city attorneys, to be policymaking officials, the
courts have considered several factors:  if the position requires technical expertise, and often involves

27  performing discretionary functions, advising city officials, representing the city, planning to implement city
goals, drafting ordinances, negotiating contracts, and rendering legal opinions.  *Biggs v. Best, Best & Krieger*,

28  189 F.3d 989, 995 (9th Cir. 1999).

the effective implementation of general departmental policy.  However, such a factual determination is not appropriate in this procedural context.[6]

Based on the foregoing analysis, the Court concludes that Defendants cannot demonstrate, based solely on the allegations in the FAC, that the Deputy District Attorney – Basic Level III position falls under the "policymaker exception."

### 2.    *Individual Defendants*

To make a *prima facie* showing of First Amendment retaliation, a plaintiff must establish that: (1) she engaged in protected political activity; (2) the defendants took an "adverse employment action" against her; and (3) her political activity was a "substantial or motivating" factor for the adverse employment action.  *Nichols v. Dancer*, 567 F.3d 423, 426 (9th Cir. 2009) (quoting *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)).

Defendants Peterson and Cwiek argue that Plaintiff fails to allege that they took any adverse action against Plaintiff or that her support for Dan O'Malley was a substantial or motivating factor for any adverse action.  This argument either ignores the factual allegations in the FAC or mischaracterizes those allegations as "conclusory" and not entitled to the assumption of truth.[7]  Under *Iqbal*/*Twombly*, "to be entitled to the presumption of truth, allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The Court finds that the allegations in the FAC meet this standard.

---

[6] Defendants have cited to a number of cases holding that certain deputy district attorneys in other cities and other counties are policymakers who may be terminated for partisan reasons.  In each case the court's holding was based not simply on the job title of "deputy district attorney," but rather on an analysis of the actual job performed under that title.  Insofar as the duties of the particular job position are not genuinely at issue, the question of whether a public employee is in policymaking or confidential position, can be determined on a motion to dismiss.  *See Hobler*, *supra*, 325 F.3d at 1150.

[7] For example, Defendants specifically identify this paragraph as "conclusory":

> In late July 2011, Association President, Barry Grove, asked Cwiek about the County's failure to place Simpson on the reemployment list.  Cwiek informed Grove that Simpson had made a sufficient case to warrant placing her on the reemployment list; however, Cwiek told Grove that Peterson had no intention of hiring back Simpson.

(FAC ¶ 25.)

United States District Court
Northern District of California

1    Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Count I against the

2    individual Defendants.

3              *3.      Monell Liability*

4    To state a Section 1983 claim against the County, Plaintiff must allege two elements: (1) a

5    violation of a constitutional right; (2) that is attributable to enforcement of a policy, practice, or

6    custom of the County.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Defendants

7    argue that Simpson has not pled a causal link between her support of O'Malley, the County's policy

8    of not hiring people who supported O'Malley, and the decision not to hire Simpson because she

9    supported O'Malley.[8]

10   Simpson seeks to hold the County liable for the individual Defendants' unconstitutional acts

11   on the basis that "the acts were done as policymakers for the County."  (FAC ¶ 10.)  "As policy-

12   makers, Peterson and/or Cwiek, among other things, demoted, disciplined, and/or refused to hire

13   individuals … who supported O'Malley in the race for District Attorney."  (*Id.* ¶ 38.)  According to

14   the FAC, these acts were carried out pursuant to a policy "to retaliate against current and prospective

15   employees by taking politically motivated adverse employment action against them for exercising

16   their First Amendment rights to free speech."  (*Id.* ¶ 37.)  These allegations are sufficient to plausibly

17   allege that a County policy was the moving force behind the alleged constitutional violation.

18   Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Count I against the

19   County.

20   **B.    STATE CONSTITUTIONAL CLAIMS**

21   Defendants move to dismiss Counts II and III of the FAC, both of which seek monetary

22   damages for violation of California Constitution, Article I, Sections 2 & 3, because California courts

23   do not recognize a private right of action for damages.  Plaintiff concedes that there is no recognized

24   damages remedy under these provisions of the California Constitution.  Additionally, at oral

25

26   [8] Defendants also argue for a third element, that the employee intended to violate a specific right.  Nothing in
     *Monell* or its progeny supports this specific intent pleading requirement.  The Supreme Court in *Collins v. City*
27   *of Harker Heights*, stated that the "proper analysis requires us to separate two different issues when a § 1983
     claim is asserted against a municipality:  (1) whether plaintiff's harm was caused by a constitutional violation,
28   and (2) if so, whether the city is responsible for that violation."  503 U.S. 115, 120 (1992).

1 │ argument, Plaintiff's counsel stated that she would withdraw these claims and proceed on Count I,

2 │ only.

3 │    Based on the foregoing, the Court **GRANTS** the Motion to Dismiss Counts II and III **WITHOUT**

4 │ **LEAVE TO AMEND**.

5 │ **IV.**   **CONCLUSION**

6 │    For the reasons set forth above, the Motion to Dismiss is **DENIED IN PART** and **GRANTED IN**

7 │ **PART**.  The motion is **DENIED** as to Count I and **GRANTED** as to Counts II and III. Counts II and III

8 │ of the First Amended Complaint are **DISMISSED WITHOUT LEAVE TO AMEND**.

9 │    This action shall proceed on Count I for Retaliatory Failure to Hire under the First and

10 │ Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

11 │    Defendants shall file their answer(s) within 14 days of the date this Order is filed.

12 │    This Order Terminates Docket Number 15.[9]

13 │    **IT IS SO ORDERED**.

14 │ **Date: March 26, 2013**

15 │          **YVONNE GONZALEZ ROGERS**

│        **UNITED STATES DISTRICT COURT JUDGE**

---

[9] The parties are Ordered to review the Court's Standing Order in Employment Cases.